# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 17, 2016

Lyle W. Cayce
Clerk

————

No. 15-20260

————

RASHEED AL RUSHAID; AL RUSHAID PETROLEUM INVESTMENT CORPORATION; AL RUSHAID PARKER DRILLING, LIMITED,

        Plaintiffs - Appellees

v.

NATIONAL OILWELL VARCO, INCORPORATED; NATIONAL OILWELL VARCO; GRANT PRIDECO, L.P.; GRANT PRIDECO  HOLDINGS, L.L.C.; NATIONAL OILWELL VARCO NORWAY, A.S.; NOW OILFIELD SERVICES, L.L.C.,

        Defendants - Appellants

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

Before STEWART, Chief Judge, and REAVLEY, and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

This case reaches the Fifth Circuit for a second time. And, though the litigation has been pending for five years, we are asked for a second time to reverse an order denying a motion to compel arbitration. We previously found that defendant National Oilwell Varco Norway ("NOV Norway") had a contractual right to arbitration before the International Chamber of Commerce ("ICC"). *See generally Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416

No. 15-20260

(5th Cir. 2014).  The remaining defendants, nonsignatories to that agreement, contend that they, too, are entitled to arbitration.

I.

Our prior opinion sets forth the relevant facts of this case. *See Al Rushaid*, 757 F.3d at 418–19.  As that opinion explains, in 2011, plaintiffs Al Rushaid Parker Drilling, Ltd. ("ARPD"), Rasheed al Rushaid, and Al Rushaid Petroleum Investment Corp. sued defendants National Oilwell Varco, Inc.; National Oilwell Varco LP ("NOV LP"); NOW Oilfield Services, LLC; NOV Norway; Grant Prideco, LP; and Grant Prideco Holding, LLC, in Texas state court.  Generally speaking, the prior business relationship between the parties had been that of buyer and seller, as memorialized by a series of contracts comprised of price quotations and corresponding purchase orders.  The lawsuit involves not only alleged breaches of the contracts, but also allegations that the defendants bribed key ARPD employees.  While the other defendants were served in 2011, NOV Norway was not served until August 2012.  *Id.* at 418. By that time, the case had been removed to federal court "based on an arbitration clause contained in a price quotation issued by NOV LP."  *Id.*

Despite the NOV LP arbitration clause, the defendants did not seek to compel arbitration and instead proceeded to discovery and set a trial date. When NOV Norway was served, however, it promptly sought to compel arbitration based on a price quotation issued by NOV Norway to ARPD.  The district court denied the motion, ruling that the NOV Norway arbitration clause was not a part of the parties' agreement and that, in any event, NOV Norway had waived its right to arbitrate.  *Id.*  On appeal, we disagreed on both counts but expressly noted that our decision did "not, however, necessarily require the district court to compel any of the other parties to arbitrate their dispute or to stay proceedings."  *Id.* at 424.

2

No. 15-20260

On remand, the defendants jointly moved to compel arbitration. The motion was based on both arbitration clauses—the one found in NOV Norway's price quotation and the one found in NOV LP's price quotation. While NOV LP asserted an arbitration clause to which it was a signatory, the other defendants (hereinafter, the "Nonsignatory Defendants") conceded they are not signatories to either arbitration clause. With respect to the NOV Norway arbitration clause, all defendants (including NOV LP) argued an entitlement to arbitration based on principles of equitable estoppel. With respect to the NOV LP arbitration clause, which was asserted in the alternative, NOV LP asserted a contractual right to arbitration while the Nonsignatory Defendants again relied on equitable estoppel.[1]

The district court rejected all arguments based on equitable estoppel, but found that NOV LP was contractually entitled to arbitration. Because that arbitration clause did not specify a forum, the district court ordered arbitration within the Southern District of Texas. All defendants have appealed. To sum up, if left undisturbed, the proceedings have fragmented. Claims against NOV Norway will be arbitrated before the ICC. Claims against NOV LP will be arbitrated within the Southern District of Texas. And claims against the Nonsignatory Defendants will be litigated in Texas state court.

II.

The district court's order was interlocutory in nature, and our appellate jurisdiction is therefore circumscribed. We may review orders denying the compulsion of arbitration and, therefore, undisputedly have jurisdiction over the appeal as it pertains to the Nonsignatory Defendants. 9 U.S.C. § 16(a)(1).

---

[1] Certain of the Nonsignatory Defendants also argued that, by its terms, NOV LP's arbitration clause applied to them. That argument was rejected by the district court and has not been advanced on appeal.

3

No. 15-20260

NOV LP, however, is another matter. Its motion to compel arbitration was granted. We do not have jurisdiction to review interlocutory orders compelling arbitration. 9 U.S.C. § 16(b)(3). Appellants, however, point out that the order *granting* NOV LP's motion to compel arbitration within the Southern District of Texas also *denied* NOV LP's motion to compel arbitration before the ICC. Given these circumstances, Appellants argue we have appellate jurisdiction under section 16 of the Federal Arbitration Act ("FAA") or the collateral order doctrine. Alternatively, Appellants contend we should exercise pendent appellate jurisdiction over the matter.

The FAA functions "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible" and represents a "statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S. Ct. 927, 940 (1983). Section 16 serves this function and policy by precluding interlocutory appeal where an order compelling arbitration has been granted and allowing immediate appeal of orders denying the compulsion of arbitration. As the Fourth Circuit has stated, "Congress sought to prevent parties from frustrating arbitration through lengthy preliminary appeals." *Stedor Enterprises, Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991).

In light of the foregoing, the Second Circuit has held that "a party cannot appeal a district court's order unless, at the end of the day, the parties are forced to settle their dispute other than by arbitration." *Augustea Impb Et Salvataggi v. Mitsubishi Corp.*, 126 F.3d 95, 99 (2d Cir. 1997). Under circumstances somewhat similar to those present here, the Ninth Circuit agreed. *See Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004). In *Bushley*, a defendant moved to compel arbitration under two separate arbitration clauses, and the district court declined to compel arbitration before the National Association of Securities Dealers but compelled

No. 15-20260

arbitration before the defendant's "Employment Dispute Resolution Program." *Id.* at 1151. The defendant appealed that portion of the order denying arbitration. *Id.* at 1152. Recognizing the "conflict over the applicability of two different arbitration provisions that directed arbitration in two different forums," the Ninth Circuit followed *Augustea* and held that "Section 16's purpose of promoting arbitration would be frustrated by further litigation over" the proper forum. *Id.* at 1154.

Here, as in *Bushley*, we are asked to consider the appeal of a party whose motion to compel was granted, "albeit not in the 'first-choice'" forum. *See id.* Consistent with the purpose of Section 16 and with every circuit that has considered this issue, we hold that Section 16 forbids appellate review.

We also lack jurisdiction under the collateral order doctrine. The collateral order doctrine is a "'narrow' exception" that "should stay that way and never be allowed to swallow the general rule." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S. Ct. 1992, 1996 (1994) (quoting *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430, 105 S. Ct. 2757, 2761 (1985)). Appellants cite no case where a court has used the collateral order doctrine to exercise jurisdiction over an interlocutory order compelling arbitration. Section 16 provides a specific framework for determining whether and when an appeal is proper, and we will not interfere with the statutory design. *See Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1021–22 (9th Cir. 2014) ("The structure of the statute . . . suggests that Congress intended to remove appellate jurisdiction from *all* orders listed in § 16(b)(1)–(4), regardless of whether any such order could otherwise be deemed collateral."); *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1211 (11th Cir. 2007) ("Applying the *Cohen* collateral order doctrine to permit an appeal that § 16(b) specifically prohibits . . . would amount to using a judge-made doctrine to erase an unequivocal congressional command."); *ATAC Corp. v.*

5

*Arthur Treacher's, Inc.*, 280 F.3d 1091, 1101–02 (6th Cir. 2002) (The "argument that the collateral order doctrine provides this court jurisdiction over the appeal flies in the face of Congress's purpose in passing § 16.").

For similar reasons, without deciding whether pendent appellate jurisdiction may properly be exercised in this context, we decline to do so. *Cf. IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 528 (7th Cir. 1996) ("By expressly denying immediate appealability to orders staying federal court proceedings pending arbitration, Congress may have precluded the application of the doctrine of pendent appellate jurisdiction to those orders."). *But see Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1050 (2d Cir. 1997) (expressly disagreeing with *IDS Life*'s ultimate holding "that section 16(b) precludes the exercise of pendent appellate jurisdiction over orders staying federal court proceedings pending arbitration").

We lack jurisdiction over NOV LP's appeal. Additionally, despite having nothing to appeal, NOV Norway was listed as an appellant within the defendants' notice of appeal. The appeals brought by NOV LP and NOV Norway must be dismissed.

### III.

Generally, we review *de novo* the denial of a motion to compel arbitration. *Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*, 782 F.3d 186, 196 (5th Cir. 2015). "We review for abuse of discretion a district court's determination of whether equitable estoppel may be invoked to compel arbitration." *Id.* A decision based on a mistake of law or on a clearly erroneous assessment of the evidence constitutes an abuse of discretion. *Id.*

"[U]nder the FAA, traditional principles of state law may allow an arbitration contract to be enforced by or against nonparties to the contract through a number of state-contract-law theories, including equitable estoppel." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir.

2014).  Texas law governs this particular dispute.[2]  *Al Rushaid*, 757 F.3d at 419.  "[W]hile Texas law has long recognized that nonparties may be bound to a contract under traditional contract rules like agency or alter ego, there has never been such a rule for concerted misconduct."  *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 194 (Tex. 2007) (footnote omitted); s*ee also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 529 n.23 (Tex. 2015).  Thus, the Texas Supreme Court has "never compelled arbitration based solely on substantially interdependent and concerted misconduct," but estoppel applies "when nonsignatories seek a direct benefit from a contract with an arbitration clause."  *In re Merrill Lynch Trust*, 235 S.W.3d at 192.

Appellants advance both "concerted misconduct" estoppel and "direct benefit" estoppel.  The concerted misconduct estoppel theory is foreclosed by *In re Merrill Lynch Trust* and *G.T. Leach Builders.  See Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App. 2014) (describing "direct benefit estoppel" as "the only form of equitable estoppel recognized in Texas").  Accordingly, we consider only the direct benefit theory.  Thus, if plaintiffs' claims against the Nonsignatory Defendants arise from or must be determined by reference to the NOV Norway or NOV LP price quotations, arbitration may be compelled.  *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005).  "On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law."  *Id.*

We "look to the pleadings to determine the nature of [the] claims."  *G.T. Leach Builders, LLC*, 458 S.W.3d at 530.  The gist of the complaint is that three

---

[2] On appeal, defendants claim for the first time that "a question exists as to whether international commercial arbitration agreements should be" analyzed under federal common law rather than state law.  Having not been raised before the district court, that argument is waived.  *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752 (5th Cir. 2014).  Accordingly, we state no view on whether federal law should have been applied.

No. 15-20260

ARPD employees were "corrupted" by the defendants and accepted bribes and kickbacks in return for "overpriced contracts" and payment on "inflated invoices." To protect this illicit revenue stream, when defendants failed to satisfy their contractual duties, the corrupted employees concealed the failures from ARPD's senior management and owners. Thus, while the action is related to contracts (including the two price quotations with arbitration clauses), it cannot be said that plaintiffs are seeking direct benefits from the contracts. The plaintiffs are not trying to enforce either the NOV Norway or NOV LP contract against the Nonsignatory Defendants, and liability is instead premised on "general obligations imposed by law."[3] *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–32. The district court did not err.[4]

## IV.

Appellants warn that permitting the district court's decision to stand means plaintiffs' claims will "be split into three proceedings—two arbitrations and one state court proceeding, an outcome the NOV Parties have tried to avoid since the outset of the case." This is an inevitable and permissible consequence where one of multiple defendants asserts a right to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220–21, 105 S. Ct. 1238, 1242–43 (1985) (noting that private arbitration agreements must be enforced even if the result

---

[3] We do not overlook the plaintiffs' breach of contract claims. To the extent the plaintiffs seek to hold the defendants liable for their respective alleged breaches of the respective contracts, the signatory/nonsignatory distinction ably sorts the claims. The Nonsignatory Defendants are not allegedly in breach of the NOV Norway or NOV LP agreements. Rather, they are allegedly in breach of their own separate agreements. *See G.T. Leach Builders, LLC*, 458 S.W.3d at 528–29.

[4] On appeal, Appellants contend for the first time that the claims against National Oilwell Varco, Inc. and NOW Oilfield Services, LLC are subject to arbitration under the NOV LP contract because the claims "are derivative of, and rest on the identical allegations asserted against . . . NOV LP." This argument was not raised before the district court and has therefore been waived.

No. 15-20260

is piecemeal or bifurcated litigation).  If Appellants had truly prioritized their desire to try the case efficiently, they could have foregone arbitration.

The appeals brought by NOV LP and NOV Norway are DISMISSED, and the district court's order is AFFIRMED.  Accordingly, the claims against defendants National Oilwell Varco, Inc.; NOW Oilfield Services, LLC; Grant Prideco, LP; and Grant Prideco Holding, LLC, are REMANDED to the District Court sitting in Harris County, Texas, 165th Judicial District.