**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

────────────

No. 19-40071

────────────

United States Court of Appeals
Fifth Circuit

**FILED**
January 9, 2020

Lyle W. Cayce
Clerk

PSARA ENERGY, LIMITED,

     Plaintiff - Appellant

v.

ADVANTAGE ARROW SHIPPING, L.L.C.;
ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.;
FORWARD HOLDINGS, L.L.C.,

     Defendants – Appellees

************************************************

PSARA ENERGY, LIMITED,

     Plaintiff - Appellant

v.

ADVANTAGE START SHIPPING, L.L.C.; ADVANTAGE TANKERS, L.L.C.;
ADVANTAGE HOLDINGS, L.L.C.; FORWARD HOLDINGS, L.L.C.,

     Defendants - Appellees

────────────

Appeal from the United States District Court
for the Eastern District of Texas

────────────

No. 19-40071

Before KING, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff Psara Energy Limited appeals the district court's January 2019 Order granting a motion to refer to arbitration this suit filed against Defendant-Appellees, Advantage Arrow Shipping, LLC; Advantage Holdings, LLC; Advantage Tankers, LLC; and Forward Holdings, LLC, (collectively, "the Advantage Defendants" or "Advantage"). We DISMISS this appeal for lack of appellate jurisdiction because the district court's Order, which administratively closed the case, is not a final, appealable order either as we have construed the Federal Arbitration Act ("FAA") or under any other theory.

## BACKGROUND

In 2010, Psara entered into a bareboat charter agreement with Defendant Space Shipping, Ltd. ("Space Shipping") to charter the vessel CV STEALTH.[1]  Through an amendment to the charter party later that year, Geden Holdings, Ltd. ("Geden") was made the "performance guarantor" of Space Shipping.

In 2014, the CV STEALTH was detained in Venezuela for more than three years by prosecutorial authorities, and Space Shipping failed to return the ship by the latest contractual redelivery date of June 22, 2015. When the CV STEALTH was finally released from Venezuela, it was out-of-class and so

---

[1] The Bareboat Charter agreement also included a provision that:

> (a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of the Clause.

The charter party refers "any dispute arising out of or in connection with the Contract" to arbitration in London, England.

2

extensively damaged due to neglect that it was incapable of sailing and in need of extensive repairs. Space Shipping towed the CV STEALTH to Trinidad where Psara took possession on March 24, 2018. She was sold as scrap. As a result of the damage, Psara initiated a London maritime arbitration claim against Space Shipping and Geden for damages equivalent to the repaired market value of the ship ($18,000,000.00) and amounts for unpaid charter hire, legal costs, interest, and other costs (an additional $1,860,063.80).

Shortly after the contractual redelivery date but before it commenced arbitration, Psara discovered that Geden Holdings had transferred its entire fleet of vessels to other corporate entities (including the Advantage Defendants). Based on the transfer of the fleet, Psara brought the instant suit in April 2018 against Space Shipping, Geden, and the Advantage Defendants alleging breach of contract, fraudulent transfer and corporate succession theories. In conjunction with its lawsuit, Psara sought and obtained a maritime attachment against the ADVANTAGE ARROW, one of the defendants' vessels found within the Eastern District of Texas. Psara obtained similar relief against the MV ADVANTAGE START in the Eastern District of Louisiana. The Louisiana case was transferred to the Eastern District of Texas under 28 U.S.C. § 1404(a) and consolidated with Psara's case pending there.

The Advantage Defendants' motions under Supplemental Admiralty Rule E(4)(f) to vacate the respective attachments were rejected, but the vessels were released upon the posting of substitute security.[2] In the case of the ADVANTAGE ARROW, the district court's order stated, "[t]he court will address the 'Motion to Vacate Attachment' at a later time."

---

[2] The ADVANTAGE ARROW was secured for the amount of $4,000,000 and the ADVANTAGE START was secured for $800,000. After transfer, the total amount of substitute security for the vessels stands at $4,800,000.

No. 19-40071

In June 2018, the Advantage Defendants moved for referral to arbitration in London on the basis that Psara's claims all arise from the charter party between Psara and Space Shipping, which contains a valid and enforceable arbitration clause. The Advantage Defendants contended that they should be included in Psara's ongoing arbitration proceedings against Space Shipping because Psara claims that the Advantage Defendants are a successor to Space Shipping and therefore liable for Psara's losses under the charter party. As Psara points out, however, the Advantage Defendants are non-signatories to the charter party and should not normally benefit from its arbitration provision. *Al Rushaid v. Nat'l Oilwell Varco, Inc.,* 814 F.3d 300, 305 (5th Cir. 2016) (describing limited theories of nonsignatory participation in arbitrations).

The district court granted the motion to refer to arbitration. The court found that the Advantage Defendants invoked the intertwined claims rule because without the underlying charter party and performance guarantee, Psara has no claims against the Advantage Defendants. Moreover, Psara cannot be permitted to sue the Advantage Defendants for contractual claims while insisting they are not entitled to the benefit of the arbitration clause in those underlying agreements. The district court further held that, while the dispute is being arbitrated, the Rule B attachments (for the vessels ARROW and START) remain in effect with posted security for Psara's potential arbitral award pursuant to the district court's jurisdiction under Sections 8 and 207 of the FAA. The district court then "administratively closed" the case, denied pending motions as moot, and retained jurisdiction to enforce any arbitration award.

No. 19-40071

Months later, the district court denied Psara's motion to stay the referral to arbitration pending appeal, and this court denied an identical motion. Psara timely appealed.

## DISCUSSION

A preliminary, and here dispositive, issue is whether the district court's order referring the suit to arbitration and administratively closing the case constitutes an appealable order. "If not, then this Court lacks jurisdiction and the appeal should be dismissed, which would pretermit any consideration of the merits of [the Appellant's] appeal." *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 165 (5th Cir. 2004).

The Advantage Defendants question our appellate jurisdiction, and Psara responds that either the district court's order compelling arbitration is final and appealable under 9 U.S.C. § 16(a)(3), or it is appeable pursuant to the collateral order doctrine. We discuss each theory in turn.

Psara's first theory turns on whether the district court's order is final. Section 16 of the FAA "governs appellate review of arbitration orders." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003). The statute accomplishes Congress's intent to favor arbitration "by authorizing immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration." *S. La. Cement, Inc. v. Van Aalst Bulk Handling, B.V.*, 383 F.3d 297, 300 (5th Cir. 2004). Thus, 9 U.S.C. § 16(a)(3) permits appeals taken from "a final decision with respect to an arbitration that is subject to this title," but § 16(b)(3) explicitly denies appellate jurisdiction over *nonfinal* orders "compelling arbitration under section 206." *See also S. La. Cement*, 383 F.3d at 300.

The Supreme Court has explained that a "final decision with respect to an arbitration" means "a decision that ends the litigation on the merits and

leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). In *Green Tree*, because the district court "ordered the parties to proceed to arbitration, and dismissed all the claims before it," the order constituted a final, appealable decision. *Id.* at 89. Crucially, the Supreme Court went on to state that "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." *Id.* at 87 n.2; s*ee also Mire*, 389 F.3d at 165.

Acknowledging the dichotomy expressed in *Green Tree*, this Circuit has repeatedly held that "[a]n arbitration order entering a stay, as opposed to a dismissal, is not an appealable final order." *S. La. Cement*, 383 F.3d at 300; s*ee also Apache*, 330 F.3d at 309 ("An arbitration order entering a stay, as opposed to a dismissal, is not an appealable final order."); *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 697, 701–02 (5th Cir.2003) (dismissing for lack of appellate jurisdiction because the stay pending arbitration was not "a final judgment by the district court"). Nearly on point with this case, the court held in *Mire* that administratively closing a case "is the functional equivalent of a stay" and "thus not an appealable order under the FAA." *Mire,* 389 F.3d at 167. This is because the entry of a stay, as opposed to a dismissal, indicates that "the district court perceives that it might have more to do than execute the judgement once arbitration has been completed." *Apache,* 330 F.3d at 309 (quoting *ATAC Corp. v. Arthur Treacher's Inc.,* 280 F.3d 1091, 1099 (6th Cir. 2002)).

In contrast, "[a] district court order that compels arbitration and dismisses or closes a case outright possesses finality and confers jurisdiction on this court." *Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London*, 772 F.3d 384, 387 (5th Cir. 2014); s*ee also Am. Heritage Life Ins. Co.*

*v. Orr*, 294 F.3d 702, 707–08 (5th Cir. 2002) (holding an order final and appealable that "closed" the case; the only claim before the court was one seeking to compel arbitration, hence there was "no practical distinction between 'dismiss' and 'close' for the purposes of [that] appeal").

The district court here adopted the magistrate judge's report and recommendation ("R&R"), "granting the [referral to arbitration], directing the parties to arbitration, and staying the case pending resolution of the arbitrable issues" in London. The district court then ordered the case "administratively closed" and retained jurisdiction to enforce any arbitration award. By adopting the R&R, the district court stayed the case, and by ordering administrative closure, it provided itself an additional safe harbor from the district courts' periodic reporting conditions. Moreover, this case commenced not as a suit simply to compel arbitration pursuant to the FAA, but to obtain relief against the defendants for, *inter alia*, breach of the charter party agreements and fraudulent transfer of assets. It is not inconceivable in such a situation that, although the defendants prevailed on a claim seeking arbitration, some aspects of the case might not be resolved in the arbitral forum, and the district court would have to reopen the case for purposes other than to enforce the arbitral award. The court's order aligns with "our case law [that] has developed clear distinction between final orders dismissing cases after compelling arbitration and interlocutory orders staying and administratively closing cases pending arbitration." *Sw. Electric*, 772 F.3d at 387. "The effect of an administrative closure is no different from a simple stay," which district courts often use "to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending)." *Mire*, 389 F.3d at 167. The court's order staying and

administratively closing the case pending arbitration was nonfinal for purposes of appellate review.

As an alternative ground for jurisdiction, Psara does not argue that its appeal satisfies the standards of 28 U.S.C. § 1292(b), which renders only some interlocutory orders appealable.  Instead, Psara contends that the collateral order doctrine, an exception to the statute, authorizes appellate jurisdiction over interlocutory appeals from orders compelling arbitration.  We rejected this argument in *Al Rushaid*, following the Supreme Court's admonition that, as a "narrow exception" to finality provisions, the collateral order doctrine should "never be allowed to swallow the general rule." *Dig. Equip. Corp.*, 511 U.S. at 868.  Plainly, "[s]ection 16 provides a specific framework for determining whether and when an appeal is proper, and we will not interfere with the statutory design." *Al Rushaid*, 814 F.3d at 304.  Every other circuit has reached the same outcome on this issue. *See Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1022 (9th Cir. 2014); *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1211 (11th Cir. 2007); *ATAC Corp.*, 280 F.3d at 1101–02.

Against this conclusion, Psara draws our attention to two cases, *Atl. Fertilizer & Chem. Corp. v. Italmare, S.p.A. of Ravenna*, 117 F.3d 266 (5th Cir. 1997) and *Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264 (5th Cir. 1998).  Neither case, however, applied the collateral order doctrine to authorize appellate review of interlocutory orders compelling arbitration, nor did either case consider the interaction between the clear statutory directive in FAA § 16(b) and the collateral order doctrine. *Atlantic Fertilizer* dealt with the district court's summary denial of a request for counter-security in light of a pending arbitration.  117 F.3d at 269.  In *Heidmar,* the appellate court reviewed, pursuant to the collateral order

doctrine, an order vacating attachment pending arbitration because conducting appellate review of the order at a later date "would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." 132 F.3d at 267 (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950)). But in this case, Psara has the security it sought because "the Rule B attachment still remains in effect in this court and applies as valid security for the claim," and the district court held than any arbitral award "could come from the Rule B attachment."

Finally, we are obliged to consider whether appellate jurisdiction exists over the order compelling arbitration under 28 U.S.C. § 1292(a)(3), which confers jurisdiction over "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." We hold this avenue is also closed to Psara.

In reaching this conclusion, we adopt the reasoning provided in dicta from a previous unpublished decision, *Bordelon Marine, L.L.C. v. Bibby Subsea Rov, L.L.C.*, 685 F. App'x. 330 (5th Cir. 2017). In *Bordelon*, this court considered whether to exercise jurisdiction over the district court's denial of the appellant's motion to re-open to enforce the method of selecting arbitrators. The court held that Appellant waived his argument under § 1292(a)(3) because it was raised for the first time at oral argument. *Id*. at 335. Nevertheless, the court explained in a footnote that the appellant's argument was unavailing even if it had not been forfeited. *Id*. at 335 n.5. The court reasoned that compelling arbitration and determining the appointment of arbitrators "was not a determination of the rights and liabilities of the parties; rather, it merely settled 'how and where the rights and liabilities would be determined.'" *Id*.

(quoting *In re Ingram Towing Co.*, 59 F.3d 513, 517 (5th Cir. 1995)).  We agree with that reasoning and find it equally applicable here.

This holding is consistent with our precedent limiting the applicability of § 1292(a)(3) to orders determining the parties' substantive rights and liabilities.  These cases take a strict view of the statute's language about "determining the rights and liabilities."  *See, e.g., Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 480–81 (5th Cir. 2014) (finding jurisdiction to review the district court's grant of summary judgment but not jurisdiction to review a Rule 60(b) order); *In re Ingram Towing Co.*, 59 F.3d 513, 517 (5th Cir. 1995) ("Orders which do not determine parties' substantive rights or liabilities . . . are not appealable under section 1292(a)(3) even if those orders have important procedural consequences." (quoting *Francis v. Forest Oil Corp.*, 798 F.2d 147, 150 (5th Cir. 1986))); *In re Patton–Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983) (holding that the appealed order must "finally determine the rights or liabilities of either party to this dispute"); *MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of Port of New Orleans*, 636 F.3d 161, 165 (5th Cir. 2011).

The district court's order to stay and administratively close Psara's case is not a final order for purposes of FAA § 16(a)(3); the collateral order doctrine does not apply to orders concerning arbitration governed by the FAA; and § 1292(a)(3) is inapplicable to referrals to arbitration in admiralty cases that do not determine a party's substantive rights or liabilities.  Consequently, this court lacks jurisdiction to review this appeal and does not reach the merits of Psara's other issues.

## CONCLUSION

For the foregoing reasons, the appeal is **DISMISSED**.