**Opinion issued January 8, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00119-CV

———————————

**RODEO RESOURCES, INC., RODEO RESOURCES GP, LLC, RODEO RESOURCES, LP, RODEO DEVELOPMENT LTD, JIM FORD, AND MELINDA FORD, Appellants**

**V.**

**RSM PRODUCTION CORPORATION, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-43695**

---

## MEMORANDUM OPINION

Generally, arbitration agreements bind only the parties at issue. But Texas law says that "sometimes a person who is not a party to the agreement can compel arbitration with one who is." *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*,

672 S.W.3d 367, 376 (Tex. 2023) (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)). Texas courts have recognized six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). This case concerns the fifth, direct-benefits equitable estoppel.

Under direct-benefits estoppel, a litigant who seeks by his claim to derive a direct benefit from a contract containing an arbitration provision may be equitably estopped from refusing arbitration. For the doctrine to apply, the claim must depend on the existence of the contract and be unable to stand without the contract. In short, this doctrine says that non-signatories may compel arbitration of claims if liability for those claims arises from a contract with an arbitration clause (but not if liability arises from general obligations imposed by law). *Lennar Homes*, 672 S.W.3d at 377. That doctrine decides this appeal.

RSM Production Corporation sued the Rodeo defendants[1] for money had and received, and the Rodeo defendants unsuccessfully moved to compel arbitration. On appeal, the Rodeo defendants contend the trial court erred in denying their motion. They argue that RSM seeks—through its money had and received claim—to derive

---

[1]    We refer to the appellants, Rodeo Resources, Inc., Rodeo Resources GP, LLC, Rodeo Resources, LP, Rodeo Development Ltd., Jim Ford, and Melinda Ford, collectively as the Rodeo defendants unless noted otherwise.

a direct benefit from contracts that require arbitration. So, the Rodeo defendants argue, the doctrine of direct-benefits estoppel requires that RSM's claim be arbitrated.

We agree. In its claim, RSM argues that the Rodeo defendants "had and received" money that, under contracts with broad arbitration clauses (and not under any other legal doctrine), is theirs. Specifically, RSM alleges that the Rodeo defendants improperly received (from the party RSM contracted with) "at least $1.04 million in payments" out of a "joint account[]" created by those RSM contracts. The contracts at issue established the account from which the alleged improper payment to the Rodeo defendants was made. Those agreements govern the account, set procedures for its operation, and prohibit the alleged commingling that led to the "money" RSM claims was "had and received" by the Rodeo defendants. And both RSM's ownership of the money and any amount allegedly belonging to RSM can be determined only by reference to those contracts.

RSM's claim depends upon the existence of those contracts and is unable to stand independently without them. Therefore, direct-benefits estoppel applies.

Moreover, RSM's claim falls within the scope of the applicable broad arbitration agreements. Accordingly, we reverse and remand this case to arbitration.

## BACKGROUND

**A.     In 2005, RSM entered into the Agreements at issue.**

The background of this case begins in 2001, when the Republic of Cameroon granted plaintiff RSM an exclusive permit to explore, develop, and produce oil and natural gas in the Logbaba Block area of the country.

In December 2005, RSM entered into two contracts with Gaz du Cameroun S.A. f/k/a Logbaba Development Ltd. regarding its interest in the Logbaba Block project: (1) a Farmin Agreement and (2) an Operating Agreement.[2] Those are the agreements at issue in this appeal.

*The Farmin Agreement*

Under the Farmin Agreement, RSM transferred 60% of its participating interest in the Logbaba Block project to Gaz (Logbaba), in exchange for Gaz performing certain work obligations related to drilling the first wells. RSM retained its undivided 40% participating interest in the project.

The Farmin Agreement includes the following broad arbitration provision:

---

[2]     The record shows, and the parties do not dispute, that Gaz du Cameroun S.A. succeeded Logbaba Development Ltd. and assumed the agreements Logbaba entered into during this period.

> **9.2 *Dispute Resolution***
>
> Any and all claims, demands, causes of action, disputes, controversies and other matters in question arising out of or relating to this Agreement, including any question regarding its breach, existence, validity or termination, which the Parties do not resolve amicably, shall be resolved by one arbitrator in accordance with the Arbitration Rules of the International Chamber of Commerce. The place of arbitration shall be Houston, Texas. The proceedings shall be in the English language. The resulting arbitral award shall be final and binding, and judgment upon such award may be entered in any court having jurisdiction. A dispute shall be deemed to have arisen when either Party notifies the other Party in writing to that effect. Any monetary award issued by the arbitrator shall be payable in United States Dollars. The arbitrator shall have no authority to award special, indirect, consequential, exemplary or punitive damages.

As the text says, "[a]ny and all claims, demands, . . . and other matters in question arising out of or relating to this Agreement . . . shall be resolved by" arbitration.

The Farmin Agreement stated that RSM and Gaz (Logbaba) entered an Operating Agreement "in order to define their respective rights and obligations."

*The Operating Agreement*

The Operating Agreement, in turn, directed Gaz (as the Operator) to establish and manage a joint account for RSM and Gaz through which the project's revenues and expenditures would be administered in accordance with the parties' participating interests (as assigned in the Farmin Agreement). Gaz, as the Operator, was to maintain the joint account "in accordance with generally accepted accounting practices used in the international petroleum industry and any applicable statutory obligations of the Republic of Cameroon."

5

At issue here, the Operating Agreement prohibited Gaz from commingling its own funds with funds for or from the joint account:

> **4.8    Commingling of Funds**
>
> Operator may not commingle with its own funds the monies which it receives from or for the Joint Account pursuant to this Agreement.

And echoing the Farmin Agreement, the Operating Agreement includes the following arbitration provision:

> (B)    <u>Arbitration</u>. Any Dispute   shall be exclusively and definitively resolved through final and binding arbitration, it being the intention of the Parties that this is a broad form arbitration agreement designed to encompass all possible disputes.
>
> > (1)    <u>Rules</u>. The arbitration shall be conducted in accordance with the following arbitration rules (as then in effect) (the **"Rules"**): Rules of the International Chamber of Commerce (**"ICC"**).

This broad text states that the parties intend the arbitration agreement to "encompass all possible disputes."

**B.    Gaz also entered agreements with a Rodeo defendant.**

On the same date as executing the Farmin and Operating Agreements (in December 2005), Gaz entered into two agreements—a Reserve Bonus Payment Agreement and a Contingent Payment Agreement—with defendant Rodeo Resources, LP.[3] In both agreements, Gaz agreed to pay Rodeo LP a royalty on the

---

[3]    Defendant Rodeo Resources, Inc. signed the original agreements, but in 2011 it assigned all of its interests in the Reserve Bonus Payment Agreement and the

oil and gas produced from the project and a reserve bonus on barrels of oil identified in the project area.

## C. Disputes arose between the parties.

In the years that followed, disputes between the parties arose and were resolved through arbitration. For instance, in 2015, RSM sued Rodeo LP for multiple claims arising out of the Logbaba Block project.[4] In that litigation, RSM was compelled by the trial court to arbitrate its claims with Rodeo LP. The arbitration tribunal ruled in favor of Rodeo LP, and the trial court confirmed the arbitration award ordering RSM to pay Rodeo LP.

Also in 2015, Rodeo LP arbitrated against Gaz in a dispute over underpaid royalties under the parties' Contingent Payment Agreement. In August 2016, Gaz and Rodeo LP entered into a Settlement Agreement (the "2016 Settlement Agreement"), under which Gaz agreed to pay Rodeo LP an undisclosed sum. Gaz and Rodeo LP further agreed to terminate the Reserve Bonus Payment and Contingent Payment Agreements. The 2016 Settlement Agreement contains the following arbitration provision:

---

Contingent Payment Agreement to defendant Rodeo Resources, LP, which we refer to as Rodeo LP.

[4] The lawsuit, filed November 18, 2015, was captioned *Jack J. Grynberg and RSM Production Corporation v. Rodeo Resources, L.P. and Jim Ford*, Cause No. 2015-69097, in the 11th District Court, Harris County, Texas.

> 10. **Governing Law, Jurisdiction, Venue and Arbitration.** This Agreement and the ancillary agreements shall be deemed to be made and entered into in the State of Texas, and shall in all respects be interpreted, enforced and governed under the laws of that state, without giving effect to the conflict of law principles of said state. Any and all disputes between the parties arising out of or related to this Agreement, and the promissory note, shall be subject to binding arbitration in Houston, Texas under the ICC Rules in effect at that time. The arbitrator shall be Alvin Zimmerman. If Zimmerman is not available, John Marshall, Q.C., shall be the arbitrator.

The record reflects other arbitration proceedings as well.[5]

## D.  In this case, RSM filed a lawsuit against the Rodeo defendants asserting a single common-law claim for money had and received.

In the underlying lawsuit, RSM asserted against the Rodeo defendants a single common-law claim for money had and received. In its live pleading, RSM alleged that the Rodeo defendants improperly received from Gaz "at least $1.04 million in payments between June 2020 and March 2023 out of the Logbaba Project's joint account[]." RSM further alleged that Gaz commingled bank accounts and improperly paid the Rodeo defendants this money from the joint account to satisfy its individual debt under the 2016 Settlement Agreement. RSM thus asserted that the Rodeo defendants hold money that—under the Agreements discussed above—belongs to RSM.

---

[5]  The record reflects that in 2018, RSM initiated arbitration proceedings against Gaz under the Farmin and Operating Agreements, where the arbitration tribunal issued a partial final award in favor of RSM. The record also reflects that in 2010, RSM initiated arbitration proceedings against Gaz's predecessor and Gaz's parent company, but it is unclear from the record what the outcome of that arbitration was.

8

**E.     The Rodeo defendants sought to compel arbitration under the direct-benefits estoppel theory; the trial court denied that motion.**

The Rodeo defendants filed a Motion to Dismiss or, in the Alternative, a Motion to Compel Arbitration. They took the position that, even as non-signatories to the Farmin and Operating Agreements, they could compel RSM to arbitrate RSM's money had and received claim under a direct-benefits estoppel theory. They argued that RSM's claim depended upon the above-described agreements, which in turn provided for arbitration.

The trial court denied the Rodeo defendants' motion without providing a basis for its ruling. The Rodeo defendants then filed this appeal.

## DISCUSSION

We initially address our appellate jurisdiction to hear this appeal. We next turn to the merits, and we conclude that RSM is required to arbitrate its claim under the doctrine of direct-benefits estoppel.

## A.     Jurisdiction

RSM argues that we lack jurisdiction to hear this appeal of the denial of the Rodeo defendants' motion to compel arbitration. Not so.

When, as here, the arbitration provisions at issue do not specify whether the Federal Arbitration Act (FAA) or the Texas Arbitration Act (TAA) applies, and the contracts state they are governed by Texas law without excluding the application of

9

federal law, both the FAA and TAA apply.[6] *See In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 890 (Tex. 2010).

The FAA and TAA permit an interlocutory appeal from an order denying a motion to compel arbitration. *See Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). Start with the FAA. Texas Civil Practice and Remedies Code section 51.016, which authorizes appeals in matters subject to the FAA, provides that a party may appeal an interlocutory order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted" by the FAA. TEX. CIV. PRAC. & REM. CODE § 51.016; *see Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). Under the FAA, in turn, a party may immediately appeal an order denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1); *Bonsmara*, 603 S.W.3d at 390.

So too with the TAA. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1) ("A party may appeal a judgment or decree entered under this chapter or an order . . . denying an application to compel arbitration."); *Bonsmara*, 603 S.W.3d at 390 n.4.

Our precedent instructs that the substance and function of the trial court's order controls this inquiry. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 673 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Indeed, an "order which

---

[6] In the event of a conflict, the FAA preempts the TAA, but no party raises a conflict here. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 778–80 (Tex. 2006).

functions to deny a party's motion to compel arbitration when viewed in the context of the record will qualify for interlocutory appeal." *Id.*

Applying these principles, the order here qualifies for interlocutory review. The Rodeo defendants moved to compel arbitration in the trial court. The trial court denied the motion. That suffices. The trial court's order functioned to deny the Rodeo defendants' motion to compel arbitration. *See id.* at 675–76 (trial court's order functioned to deny defendant's motion to compel arbitration, thus providing court with jurisdiction over interlocutory appeal). We thus have jurisdiction over the Rodeo defendants' interlocutory appeal. *See* 9 U.S.C. § 16(a)(1); TEX. CIV. PRAC. & REM. CODE §§ 51.016, 171.098(a)(1).

Despite this, RSM argues that, as non-signatories to the Farmin and Operating Agreements, the Rodeo defendants cannot establish interlocutory appellate jurisdiction. We disagree. In fact, the United States Supreme Court rejected a similar argument in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). There, like here, non-signatories to a contract sought to use "equitable estoppel" to invoke the contract's arbitration clause and compel the plaintiff to arbitrate claims against them. *Id.* at 626–27. The Supreme Court explained that, by Section 16's "clear and unambiguous terms, any litigant who [filed an eligible motion under the FAA] is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible." *Id.* at 627. The "underlying merits [are] irrelevant,"

and jurisdiction over the appeal "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order." *Id.* at 628 (cleaned up). In short, whether a non-signatory employing the theory of equitable estoppel is ultimately entitled to compel arbitration is a merits question—not one that deprives the court of jurisdiction. *See id.* at 628–29, 631.

That reasoning applies here. The Rodeo defendants appeal from an order denying their motion to compel arbitration. That establishes our jurisdiction. *See id.* at 627–29. "[W]hether [the Rodeo defendants are] in fact eligible" to compel arbitration under an equitable estoppel theory is a merits question—not a jurisdictional one. *See id.*

Federal courts have repeatedly applied this principle. *See, e.g.*, *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303 (5th Cir. 2016) ("We may review orders denying the compulsion of arbitration and, therefore, undisputedly have jurisdiction over the appeal as it pertains to the Nonsignatory Defendants."); *Ross v. Am. Express Co.*, 547 F.3d 137, 140, 141 & n.2 (2d Cir. 2008) (similar).

Texas law is in accord. *See Bonsmara,* 603 S.W.3d at 389–92, 400–01 (in context of appeal from final judgment, appellate court had jurisdiction to consider trial court's denial of defendants' (both signatory and non-signatory) motion to compel arbitration); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 510, 527–30 (Tex. 2015) (reviewing merits of non-signatories' interlocutory

appeal from denial of motion to compel arbitration based on equitable estoppel theory); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 304–05 (Tex. 2006) (similar); *see also Clayton v. Tomlinson*, No. 09-24-00020-CV, 2025 WL 339166, at *1 (Tex. App.—Beaumont Jan. 30, 2025, no pet.) (finding interlocutory jurisdiction over appeal filed by non-signatories challenging denial of motion to compel arbitration).[7]

We have jurisdiction over the Rodeo defendants' interlocutory appeal. *See* 9 U.S.C. § 16(a)(1); TEX. CIV. PRAC. & REM. CODE §§ 51.016, 171.098(a)(1).

## B. Motion to Compel Arbitration

Having determined that we have jurisdiction, we turn to the merits of the Rodeo defendants' motion to compel RSM to arbitration.

### 1. Standard of review and applicable law

Texas favors arbitration. *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 198 (Tex. 2022). A party seeking to compel arbitration must establish that "(1) there is a

---

[7] RSM relies on *Natgasoline LLC v. Refractory Construction Services, Co. LLC* to argue that we lack jurisdiction. 566 S.W.3d 871 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). But *Natgasoline* is distinct. There, an energy company (a non-signatory defendant) sought to compel two other parties—a general contractor and subcontractor—to arbitrate *against each other* under their arbitration agreement, without involving the energy company in the arbitration. *Id.* at 876–78. The trial court denied the motion, and the energy company appealed. *See id.* The Fourteenth Court explained that it did not have jurisdiction over the energy company's appeal because it "does not seek to invoke its own asserted right to participate in arbitration—rather, it seeks only to compel arbitration between two **other** parties under contracts it did not sign." *Id.* at 882 (emphasis in original). Unlike *Natgasoline*, the Rodeo defendants appeal from an order denying *their* motion to compel arbitration based on their *own* asserted right to arbitrate. *See id.*; *see also Carlisle*, 556 U.S. at 627–29.

valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope." *Cerna ex rel. R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 588 (Tex. 2025) (quoting *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011)). When reviewing the denial of a motion to compel arbitration, we defer to the trial court on factual determinations supported by the evidence and review legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Gateway matters such as whether a valid arbitration agreement exists and whether an arbitration agreement can be enforced by a non-signatory are questions of law reviewed de novo. *See Lennar Homes*, 672 S.W.3d at 376.

"Arbitration is a creature of contract between consenting parties," and generally, "[a] party cannot be forced to arbitrate absent a binding agreement to do so." *Jody Farms*, 547 S.W.3d at 629, 632. But the Texas Supreme Court has concluded that, "sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." *Lennar Homes*, 672 S.W.3d at 376 (quoting *Meyer*, 211 S.W.3d at 305). As explained, Texas courts have identified "six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Jody Farms*, 547 S.W.3d at 633; *accord Lennar Homes* at 376. This case concerns the fifth.

**2.  RSM is required to arbitrate its claim.**

RSM is required to arbitrate its claim. We thus reverse.

**a.  Direct-benefits estoppel applies.**

Under direct-benefits estoppel, a litigant "who seeks by his claim to derive a direct benefit from the contract containing the arbitration provision may be equitably estopped from refusing arbitration." *Meyer*, 211 S.W.3d at 305 (internal quotation marks omitted). A non-signatory defendant may invoke the doctrine to estop a signatory plaintiff from refusing arbitration, *see id.* at 305, 307–08, just as a signatory defendant may invoke it to estop a non-signatory plaintiff from refusing arbitration, *see Lennar Homes*, 672 S.W.3d at 372–73, 377–79.

As the Texas Supreme Court has explained, a litigant cannot "on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by [an] agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *G.T. Leach Builders*, 458 S.W.3d at 527 (quoting *Meyer*, 211 S.W.3d at 306). Thus, if a litigant seeks "direct benefits" under a contract that contains an arbitration agreement, the claimant may be compelled to arbitrate under that contract. *Id.*

To determine "[w]hether a claim seeks a direct benefit from a contract containing an arbitration clause[,]" we examine the "substance of the claim," and we look past a party's "artful pleading." *Id.* (quoting *In re Weekley Homes, L.P.*, 180

15

S.W.3d 127, 131–32 (Tex. 2005)). This standard is not met by a claim that merely "refers to" or "relates to" the contract that contains the arbitration agreement. *Id.* at 528. Nor is the standard met by claims when liability arises solely from general obligations imposed by law, including "statutes, torts and other common law duties." *Id.* at 528.

Instead, under this doctrine, "the claim must *depend on* the existence of the contract and be unable to stand independently without the contract." *Id.* at 527–28 (cleaned up and emphasis added). Direct-benefits estoppel applies when the "alleged liability 'arises solely from the contract or must be determined by reference to it.'" *Jody Farms*, 547 S.W.3d at 637 (quoting *Weekley Homes*, 180 S.W.3d at 132). "When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims." *Meyer*, 211 S.W.3d at 307; *accord Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 568–69 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

This doctrine applies here. RSM seeks, through its money had and received claim, to derive a direct benefit from the Farmin and Operating Agreements, which contain broad arbitration provisions that do not exclude RSM's claim. *See Meyer*, 211 S.W.3d at 307–08; *Lennar Homes*, 672 S.W.3d at 377–79. Therefore, RSM is required to arbitrate its claim.

16

This is evident from RSM's amended petition. Under its sole claim, RSM aims to prove that the Rodeo defendants possess money that, in equity and good conscience, belongs to RSM. *See Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, 695 S.W.3d 778, 816–17 (Tex. App.—Houston [1st Dist.] 2024, pet. denied); *Ferrara v. Nutt*, 555 S.W.3d 227, 244 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

But this claim depends entirely on—and could not exist without—the Agreements at issue:

- RSM alleges that the Rodeo defendants improperly received from Gaz "at least $1.04 million in payments between June 2020 and March 2023 out of the Logbaba Project's joint account[]"—an account *created and governed by* the Operating Agreement and referenced by the Farmin Agreement, and that would not exist absent those Agreements.

- RSM's theory is that Gaz is commingling funds—a prohibited action under the terms of the Agreements—and thereby improperly paying the Rodeo defendants to satisfy its individual debt under the 2016 Settlement Agreement out of the joint account.

- RSM alleges that Gaz's payments to the Rodeo defendants were improper because "despite the terms of, *inter alia*, the Operating Agreement and other binding settlement agreements between [Gaz] and RSM, [Gaz] has used (and continues to use) a commingled set of bank accounts for the Logbaba Project, in which [Gaz] holds its own funds and RSM's funds."

- RSM thus asserts that the money held by Rodeo belongs to RSM.

As this shows, RSM's claim is premised on the Agreements (which broadly mandate arbitration). The Farmin and Operating Agreements established the joint

17

account at issue, without which there would be no claim. They govern the account, set procedures for its operation, and prohibit the alleged commingling that led to the "money" RSM claims was "had and received" by the Rodeo defendants. Those Agreements establish RSM's participating interest, which dictates the portion of joint-account funds allocated to RSM and underpins RSM's claim to the money here. Moreover, RSM's theory is that Gaz is paying them under the 2016 Settlement Agreement. RSM's claim depends entirely upon the existence of these Agreements.

Additionally, RSM's claim requires it to establish that it is the owner of the money held by the Rodeo defendants. *See Ferrara*, 555 S.W.3d at 244. But RSM cannot do so without these Agreements. Both RSM's claim to ownership of the money and any amount allegedly belonging to RSM cannot stand independently of and must be determined by reference to the Farmin and Operating Agreements. *See G.T. Leach Builders*, 458 S.W.3d at 527–28; *Jody Farms*, 547 S.W.3d at 637; *see also Austin v. Duval*, 735 S.W.2d 647, 648–49 (Tex. App.—Austin 1987, writ denied) (plaintiff had no claim for money had and received because ownership rights to money at issue were extinguished pursuant to express terms of contract between parties).

RSM's purported damages (the "$1.04 million" that RSM asserts belongs to it) also depend upon the Farmin and Operating Agreements. *See Meyer*, 211 S.W.3d at 307 ("When a party's right to recover and its damages depend on the agreement

18

containing the arbitration provision, the party is relying on the agreement for its claims."); *accord Steer Wealth*, 537 S.W.3d at 568–69; *see also Picone v. Cruciani*, No. 05-22-00841-CV, 2023 WL 8825055, at *5 (Tex. App.—Dallas Dec. 21, 2023, no pet.) (applying direct-benefits estoppel because signatory-plaintiff's damages claim depended on the agreement with the arbitration provision). RSM provides no other legal basis for why that money belongs to it.

 "[RSM] is trying to have it both ways: it is asserting rights that it would not have but for the [Farmin and Operating Agreements], but refusing to honor its agreement to arbitrate disputes over those rights." *See Meyer*, 211 S.W.3d at 308.

Under the circumstances, direct-benefits estoppel applies because RSM's money had and received claim—and the damages RSM seeks—depend upon the existence of the Farmin, Operating, and 2016 Settlement Agreements; RSM's claim is unable to stand independently without those Agreements. *See G.T. Leach Builders*, 458 S.W.3d at 527–28; *Jody Farms*, 547 S.W.3d at 637.

**b.      RSM's claim falls within the scope of the arbitration clauses.**

Having concluded that the direct-benefits estoppel theory applies—so RSM cannot avoid arbitration on the basis that the Rodeo defendants are not parties to the contracts—we turn to whether RSM's claim falls within the scope of the arbitration clauses at issue. *See Rachal v. Reitz*, 403 S.W.3d 840, 849–50 (Tex. 2013) (once direct-benefits estoppel is established and the arbitration provision becomes

enforceable, the party seeking to compel arbitration must still show that the dispute falls within the scope of the arbitration agreement). It does.

Once a valid arbitration agreement is established, a strong presumption arises in favor of arbitration. *Id.* at 850; *Ellis*, 337 S.W.3d at 862. We interpret an arbitration agreement according to its plain language, applying the terms as written. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 285 (Tex. 2021). We resolve doubts as to the agreement's scope and other issues unrelated to validity in favor of arbitration. *See Ellis*, 337 S.W.3d at 862.

When a plaintiff pursues a claim on a contract, and "the relied-upon arbitration clause is broad enough to cover [the] claims, . . . then the plaintiff must pursue all claims—tort and contract—in arbitration." *Lennar Homes*, 672 S.W.3d at 377 (cleaned up); *see, e.g., Taylor Morrison of Tex., Inc. v. Kohlmeyer*, 672 S.W.3d 422, 426 (Tex. 2023) (non-signatory homeowners were required to arbitrate claims against homebuilder under direct-benefits estoppel doctrine; homeowners' claims fell within the scope of arbitration agreement, which "broadly covers any claims or disputes related to the agreement").

Here, given the broad arbitration provisions in the Farmin, Operating, and 2016 Settlement Agreements, RSM's claim falls within the scope of those clauses. *See Kohlmeyer*, 672 S.W.3d at 426; *Meyer*, 211 S.W.3d at 306–07. The Farmin Agreement requires that "*[a]ny and all claims* . . . arising out of or relating to this

20

Agreement" be resolved in arbitration. (emphasis added.) So too with the Operating Agreement. It provides that "any dispute" shall be arbitrated. And it states that "this is a broad form arbitration agreement *designed to encompass all possible disputes*." (Emphasis added.) Likewise, the 2016 Settlement Agreement mandates that "[a]ny and all disputes between the parties arising out of or related to this Agreement" be arbitrated.

As explained, RSM's claim depends upon the existence of these Agreements and falls within the "all possible disputes" language in the Operating Agreement. It also "aris[es] out of or relat[es] to" the Farmin and 2016 Settlement Agreements. Thus, under the Agreements' plain terms, RSM's claim falls within the scope of their broad arbitration clauses. *See Meyer*, 211 S.W.3d at 306–08 (plaintiff was estopped from refusing arbitration; clause requiring arbitration for disputes "involving the construction or application of any of the terms, covenants, or conditions" was broad enough and "easily include[d] [plaintiff's] claims"); *see also Kohlmeyer*, 672 S.W.3d at 426 (plaintiffs' claims fell within the scope of arbitration agreement, which "broadly covers any claims or disputes related to the agreement"). Because the doctrine of direct-benefits estoppel applies and RSM's claim falls squarely within the scope of the arbitration clauses at issue, we hold that the trial court erred in denying the Rodeo defendants' motion to compel arbitration. *See Meyer*, 211 S.W.3d at 307–08; *Lennar Homes*, 672 S.W.3d at 377–79.

# CONCLUSION

The trial court erred in denying the Rodeo defendants' motion to compel arbitration. Accordingly, we reverse the trial court's order, and we remand this case to the trial court with instructions to render an order compelling RSM's claim to arbitration.

Jennifer Caughey
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.